The United States Courts for the First Circuit is now in session. All persons having any business before this Honorable Court may give their attendance and they shall be heard. God save the United States of America and this Honorable Court. Honorable Court is in session. Today's case will be called as previously announced and the times will be as allotted to counsel. The case today is United States v. Donald Turner. Appeal numbers 23-1848 and 23-1849. Attorney Chevitz, please introduce yourself for the record and proceed with your argument. Good afternoon. It's Vivian Chevitz for Appellant Turner. I'd like to reserve three minutes for rebuttal with the Court's permission and I'd like to express my thanks for allowing me to argue this remotely. You're welcome. The issue in this case involves what to do with the basically kind and decent guy who's had a lifetime history of mental health and addiction concerns and has committed what the District Court called nickel and dime crimes and they were. They were little. I mean, I don't know if you can describe it as little bank robberies and he never used a gun. He never showed a gun. He never was violent and he got caught because he wanted to get caught that time. He was in a crisis. He wanted to commit suicide and he was caught. And the issue is should we put him in prison again for the longest time possible, for consecutive time, for probation violations, for supervised release violations, or can we do something different? Should we do something different? Ms. Chevitz, we're not the District Court. We don't do initial sentencing. You're here on appeal and your arguments are that the District Court committed error in various rulings. You don't have a lot of time. Can we get to that? Yes, but I do want to say that the country, the District Courts have gotten increasingly punitive when it doesn't do any good and I'm asking the appellate court to consider that because without guidance from the appellate courts, the District Courts are going to continue not considering the 3553 factors in a way that is Well, I mean you describe them as nickel and dime bank robberies. Frankly, most bank robberies don't have a large haul of cash. The problem with bank robberies, in addition to the obvious, is the terror that they impose on the people that they're inflicted on. And so when you describe them or diminish those crimes, you're not actually focusing on, to take your argument as you're presenting it now, what makes these crimes so serious? What makes crime serious is, of course, the threat to the bank teller, the turning against the society's norms, and robbing a bank. For sure, we know that. But this man has not been helped by continued incarceration. And the issue is, should he be punished beyond the minimum? So the District Court says the reason for that is public protection. This guy has robbed banks four times. Why is public protection not a sufficient basis for this judge to have determined the sentence? Because in this case, this Judge Walker said, I know he's going to do it again. And maybe he is, except he's going to do it again if he doesn't get treatment. I can't say that the Bureau of Prisons must give treatment. But in the absence of treatment, should he be held longer than 180 months, the minimum, the statutory minimum? That's what we're arguing against. Counsel, can I move you towards, I think so far you've been addressing the substantive reasonableness arguments that you made. And I'd like to move you to the procedural reasonableness arguments. One of the arguments that you made was that the District Court was wrong not to rule on the threat of death objection. But the government responds, as the District Court did, that it really didn't need to because it wasn't going to affect the ultimate guideline calculation. And under Rule 32, there's a provision that specifically says the District Court can not reach an issue and it would make no difference to the sentence. So can you address that? Why do you think the District Court was wrong in interpreting Rule 32 here? It seems pretty persuasive what the District Court said in terms of it not impacting the sentence and therefore it being unnecessary for him to make a ruling. But why do you think that was wrong? In this case, not directly impacting the sentence, that's true. So under Rule 32, it may not affect the ultimate sentence, but it affects where the guidelines start. And that's important in every case. Further, in a case like this, it affects what Judge Afram discussed, which is terrorizing the tellers and menacing society. And as we discuss in the brief, there are fears of death and there are not fears of death. And the threat of death did not occur here. How a court thinks about that was instructive in every sense of this sentence. So I'm not saying it would directly affect the sentence, but if there was not a threat of death, if what he did was nothing greater than what courts have held is the normal fear in a bank robbery, which I contend is the case, then he should have ruled that there was not a threat of death and therefore start the guideline analysis lower. And it wouldn't have affected possibly the ultimate sentence, but it also would affect how we talk about a lifetime gun ban under 922G, which I will also get to, but I thought I would discuss this just a little bit more. This man did not say, I'm going to use the gun, I'm going to kill you. He said, I have a gun. That happens in many cases. My contention is that it doesn't produce a stronger fear or shouldn't when there's no actions, there's no threat of using the gun. What's the point of him saying that then? What's the point of him saying that? He says, I have a gun and you don't think that the next sentence of that is implied? No, I don't. I think that the guidelines say express fear, express threat of death. Council, I guess what I'm wondering, given your responses, you sort of, again, focused on the determination under the guidelines, but there was no dispute by your client to the basic fact that this is what he said to the teller. And so, again, I'm not sure I understand your argument about why a determination for the guideline purposes of whether that plus two is added directly impacts Judge Walker's statements that he's very concerned about what was said to the thank teller. Because, again, correct me if I'm wrong, but your client did not contest the basic facts of this is what he said, correct? The client, I was not trial counsel, but the client did not contest that that's what the teller remembered. That there was no note found and the teller said, he said something like this, and he might have. I don't know. There's four minutes left, four minutes. So, Council, maybe we can move you to the Second Amendment argument then. So, you know, the government says that you forfeited this argument by failing to raise it in a motion, a Rule 12 motion before the plea agreement, before the entry of the plea. Can you respond to that? Why weren't you required to raise this argument by motion? Perhaps he was, but Judge Walker went on, considered it on the merits, and that's why it was not waived or forfeited. So, Council's argument is that it should have been, it should have been deemed waived or forfeited, but it wasn't. It was raised, and Council, the government is talking about the standard of review here, because it was raised or wasn't raised. Since it was raised, it is not a plain error standard. That's our contention. Since Judge Walker considered it on the merits and reached a conclusion, the review here is not for plain error. The review here is plenary. Why is it not waived by the plea agreement, where he waived all challenges to conviction, all the challenges to the conviction? Well, the government didn't raise that, and the government has forfeited the argument. When's it supposed to raise it? Don't you raise that in the red brief? It comes up on appeal, and the government says, sorry, you waived that appellate argument. They raise that in the red brief. When are they supposed to raise that? They're supposed to raise it at the time of the argument in the district court. It's not, you can raise it in the district court. You're stuck with whatever ruling that is. You can't raise it to us. That's the point of the waiver. Well, but the waiver was not found, and the government did not press the district court for a finding of waiver. What sauce for the goose should be sauce for the gander? Ms. Shevitz, you say you weren't trial counsel. I believe what happened at sentencing was trial counsel for defendant made an affirmative argument to the district court that the appeal waiver did not apply here, because of the Supreme Court's class decision, and that this fell within it. The government did not reply to that. The district court did not enter any sort of ruling on that. The district court then just proceeded directly to the merits of the Second Amendment claim. This circuit has not taken a firm position on the full extent of the Supreme Court's ruling in class. I have actually been trying to think through that issue, which I think is really very difficult. So in the one en banc case we have had on this subject, we simply bypassed the question, because even on the merits of the claim in that case, the defendant lost, and so we had no need to reach that question. In your reply brief, you do say there was no discussion of a Second Amendment waiver at the change of plea. Indeed, there was no discussion whatsoever of the waiver of appellate rights. It's far from clear that at that point it was a knowing and voluntary waiver of rights. We do have one opinion in which we thought the record was sufficiently murky that we, again, kind of bypassed and reached the merits. I take it that's the argument you're making to us. Yes, there was certainly no knowing and voluntary waiver of the right to raise this issue, and the general statement of the plea agreement of issues like that is not sufficient to bar this claim. That's time. That's what our position is. Thank you. We'll give you time for rebuttal. Thank you. Thank you, Counsel. At this time, would Attorney Shevitz please mute her audio and video, and would Attorney Feinberg please unmute her audio and video? And, Attorney Feinberg, please go ahead and introduce yourself on the record to begin. You have a 15-minute argument. Thank you. May it please the Court. Good afternoon. My name is Lindsay Feinberg, and I'm appearing on behalf of the United States in this matter. This appeal raises two distinct issues, one of which is whether the district court's aggregate sentence of 234 months imprisonment was procedurally and substantively reasonable, and the second of which is whether Mr. Turner's Second Amendment challenge, which was, of course, identified for the first time by trial counsel in his sentencing memorandum, was waived, forfeited, or is otherwise devoid of merit. Turning first to the sentencing issue, the sentence that was imposed by the district court was certainly significant, 210 months imprisonment for the substantive offenses and a consecutive 24 months imprisonment for the supervised release revocation. However, in imposing this within-guideline sentence on an armed career criminal who had committed three previous bank robberies before committing a fourth bank robbery and possessing a firearm as a prohibited person while he was on supervised release, the district court followed this court's well-established precedent. It correctly calculated the guideline range. It appropriately considered the pertinent sentencing factors. It did not treat the guidelines as mandatory. It adequately explained its chosen sentence, and it made no clearly erroneous factual findings. Walking through some of the procedural errors that were flagged by defense counsel here, the district court did not clearly err by finding that one of Mr. Turner's mitigation arguments suggested that his probation officers purported indifference to him was a contributing factor in his decision to rob the bank. The district court's conclusion in this regard is amply supported by review of the record. In fact, on page 42 of the addendum, defense counsel frames the issue before the court by saying, quote, when Don, that being Mr. Turner, went into the Bangor Savings Bank, he was in the middle of a mental health crisis. He was ostensibly homeless, and he was suicidal, and he asked for help from his probation officer, and unfortunately, he didn't get it, end quote. On page 46 of the addendum, Mr. Turner's girlfriend, who spoke on his behalf at sentencing, quote, it saddens me that probation wasn't able to support him more this time around, end quote. In Mr. Turner's own words, on page 50 of the addendum, when I said to my probation officer that I wanted to kill myself, and I was told in return, just don't hurt anybody else, how do you think that made me feel? It hurt me deeply, end quote. Mr. Turner again on page 50, quote, I asked, and I asked, and I asked for help. I asked for probation. I tried to get a lawyer to help me so they would come to, you know, so that I wouldn't have to sit in jail and wait to get into rehab. I just wanted to go on my bracelet so I could continue working, and I could continue trying to get into treatment, end quote. Mr. Turner goes on to say things, including, I was told by the probation officer that they don't do terms, period. The probation officer had already implied he was going to lock me up. A simple phone call to my girlfriend from the probation officer during that week of limbo. It was that simple. This goes on for, yes, Your Honor. I understand your argument. I think you presented a lot of those framings of the record in your brief. So it's your position that the district court essentially just made a factual finding about the statements in the allocution by Mr. Turner based on observing his demeanor and that we owe substantial deference to that. Yes, Your Honor. Because, you know, we can't, we're not in the courtroom there and couldn't really fully grasp the way that the district court could. What was the overall intent of the statements in the allocution? Is that essentially the argument as you presented it to us? It's just a clear error argument. That is essentially the argument, Your Honor. With the addition that there's also an argument made that the district court somehow placed undue weight on these statements. And the government would add that in addition to what Your Honor rightly outlined as the government's position, that it's the government's position that the district court did not place undue weight on these statements because the record is replete with them. Can I, of course, if my other members of the panel want to ask more questions on the sentencing, they will. But can I just ask you a few questions on the Second Amendment piece of the case? As you just heard us discussing with Mr. Turner's counsel, one of your main arguments on appeal is that the language in the plea agreement bars Mr. Turner's current Second Amendment claim. But that wasn't raised to the district court below. The government never made that argument, never suggested in any way from what I could tell on the record. You could tell me if I'm wrong that somehow the plea agreement itself barred the claim. So so why hasn't the government forfeited that claim for appeal? Well, Your Honor, as Judge Aframe pointed out in his questioning of opposing counsel, typically the government brings this up for the first time on appeal. It would be unusual, in my experience as an AUSA who handles things before the trial court, to be litigating before the district court the scope and the nature of an appeal waiver. It would be premature, in fact. It's not until issues are brought up before this court on appeal by an appellant that the appellee has an opportunity to respond in the first instance. Counsel, it's not unusual in the transcripts we see at the change of plea hearing for the trial judge to go over the terms of the plea agreement, including the waiver of appellate rights, and just confirm that that's been discussed with counsel and that he's agreed to it. That wasn't done here. So I understand the position that that's essentially an appellate issue. As a matter of practice, we don't get into it in the district court. But whether or not there has been a forfeiture by the government, there is an entirely separate issue about the language of the plea agreement in light of and the failure to discuss it with him and the class case. I'm sorry, Judge. I apologize for interrupting. Attorney Shevitz has dropped out of the meeting, and we're going to try and get her right back. I don't know what happened yet. Okay, thank you for letting us know. We'll pause momentarily. Thank you. IT, can we pause the stream for a second while I try and... IT, can you put us back on the record? And then we'll go back to Attorney Feinberg. And I think Judge Lynch was asking a question. I'm sorry about the delay. Go ahead, Judge. So, for defense counsel, I was basically asking the assistant U.S. attorney the same set of questions I asked you about the waiver and the plea agreement. And whether rather than having to decide that issue under class, we should just get to the merits of the Second Amendment claim. So, Ms. Feinberg, if I could pick up there. The next question really has to do with not the issue of whether Congress can identify certain categories of offenses as warranting prohibition on gun ownership, but on the permanence question. In her briefs, defense counsel kept stressing that this was not just a temporary disenfranchisement, if you will, but a permanent one. So, I have understood that some of your commentary about the judge's rejection of the mitigation argument also went to this issue of temporary versus permanent disenfranchisement. Could you just pick up at that point? Yes, Judge. Going back to your original questions from before we were disconnected, you were asking, if my notes are correct, about whether to avoid the complications injected by class and the appeal waiver bit and get to the merits. And I guess before I transition to the next part of your question, I'd add two quick points on that. The first is that this Court's precedent makes very clear that in a case where, as here, Mr. Turner has failed to address the enforceability of the appeal waiver at all in his initial brief, it is sometimes appropriate, and often, in fact, appropriate, to treat as waived any claim that the waiver is invalid or should not apply. Yes, that's in your brief. Go ahead. Your Honor, it's also correct that at the review of the change of plea hearing transcript, the District Court did not expressly discuss with Mr. Turner the provisions of the sentence appeal waiver. That is correct, and that's reflected on Docket Entry 93 at page 17. What the government would add with respect to that, Your Honor, is that while the District Court didn't expressly discuss with Mr. Turner the fact that he was plea agreement included in appeal waiver with respect to his, quote, guilty plea or any other aspect of his conviction, that it's important to note that the District Court also did not introduce or inject any confusion about the scope of that provision with Mr. Turner. And a review of the colloquy makes clear that Mr. Turner was aware of and didn't seem to be at all confused with the scope of both the plea agreement and the appeal waiver. Turning to your next question, Judge, with respect to the temporary versus permanent distinction on the merits, Judge Walker makes clear at sentencing that someone with Mr. Turner's criminal history, again, a now thrice convicted bank robber who also has convictions for burglary and criminal threatening with a dangerous weapon, is not someone for whom temporary or permanent possession of a firearm or prohibition, rather, should cause concern. And I think it's worth pointing out, too, Your Honor, that even if the court doesn't want to delve into the issues with the appeal waiver, that there's a very strong argument to be made that the defendant didn't raise appropriately this issue before the District Court and did not, in fact, file a motion under 12B. But it does look like the District Court itself bypassed that problem. I mean, the point of Rule 12B is to give the District Court a chance to resolve these things. And if you don't give the District Court a chance, the idea is you shouldn't get plain error review on appeal. But we don't have that problem because the District Court did, in fact, choose to reach the merits. So there doesn't seem to be any policy reason to reach out and decide this case as a 12B issue. Ms. Weinberg, direct your attention, please, to the merits of the Second Amendment claim. Yes, Your Honor. Mr. Turner's brewing came as devoid of merit. It's as simple as that. Even if the court were to look past the numerous arguments that the government's made— Four minutes left. Four minutes. You've already been told to move past that. Get to the merits. Nothing in Bruin or in the Supreme Court's recent decision in Rahimi provide a basis for this court to conclude that Mr. Turner, as applied to him, 922G1, or facially, has a viable constitutional challenge. Why? Because Mr. Turner is a violent felon for whom it falls immediately in the category of persons that the Supreme Court has made clear time and again are concerned with possessing firearms. Even as the Supreme Court has been reshaping its Second Amendment jurisprudence, the Supreme Court in Bruin has referred to more than a dozen times that the Second Amendment right belongs to law-abiding citizens. And two of the concurring justices, Justices Kavanaugh and Chief Justice Roberts, made clear that Bruin didn't call into question the longstanding prohibition of firearms by felons. There is no argument that could be made on this record, Judge Lynch, that Mr. Turner is a nonviolent felon. Counsel, what I'm struggling with, however, is, you know, the Supreme Court's decisions are quite clear that it's the government's burden to come forward with historical analogs to show that the statute is relevantly similar to regulations in our nation's history and tradition. And the government just didn't do that here. And so, you know, how should we be looking at the issues, given that the government came forward with nothing below and actually came forward with nothing in the red brief as well? So we haven't had any substantive argument from you on the merits, despite the fact that it's the government's burden. And I think after Mr. Turner filed his sentencing memorandum in May, you know, you had four or five months before the hearing, and the government never responded to the Bruin argument. So can you address how we're supposed to do the analysis when the government hasn't come forward with anything? Yes, Your Honor, and I think, Judge Rickman, your concern gets exactly back to something that Judge Aframe was raising earlier, which is the procedural posture here is strange. You know, if the court compares what happened in the Class case, or if the court compares what happened in the Southern District of Mississippi case that opposing counsel places great weight on, in both of those cases, the defendant filed a motion to dismiss the indictment. They filed a 12b motion. That never happened here. So the district court never had put squarely before it. This is an objection. If the court looks at the docket, entry 66, which is Mr. Turner's 30 pages of objections to the pre-sentence report, this issue isn't raised there. Ms. Feinberg, please. At sentencing, a serious Second Amendment issue was raised. The district court recognized it as a serious issue and tried to give what he understood to be the present state of the law. Since Rahimi and since our plain error decision under the Second Amendment, there have been a lot of developments in the circuit law, including a lot of circuit decisions, which actually help the government position. Is it the government's view now that we can look at those circuit decisions involving other crimes that were crimes involving violence or the threat of violence, and that is sufficient in this case to meet the government's burden? Yes, Your Honor, that is the government's contention. The district court's fundamental concern at sentencing, after noting that the parties hadn't briefed the issue, is the question that Judge Walker posed to the parties, which is whether or not Mr. Turner's felonies constituted the type of dangerous felonies for which firearms regulations would be permissible, meaning constitutional. Government counsel clearly took the position that they were for the district court, and government counsel on appeal takes that same position. While we did not have a searching hearing, the government would submit that the reason is the first time any argument was made that the government hadn't carried its burden was at the sentencing hearing. So defense counsel, for the very first time at the sentencing hearing, orally suggests that the government had failed to carry its burden. That's on pages 36 and 37. Counsel, I don't believe that's accurate. Wasn't the Bruin issue raised in the sentencing memorandum that defendants counsel filed in May and the hearing, if I'm correct, was in November? So it's about a five-month difference. Do I have my timeline wrong? Your timeline is correct, Your Honor, but if I may briefly explain perhaps where the disconnect is between your reading of the record and mine. Sure, go ahead. Why don't you take a minute? Okay, so on pages 41 and 43 of the appendix, the court has noted correctly that in Mr. Turner's 39-page sentencing memorandum, the Bruin issue was flagged for the first time. There is not a challenge then that his 922G claim is unconstitutional either facially or as applied. It's a one-paragraph argument that contains two sentences. In a letter to the district court, this also appears on the docket, dated August 2nd of 2024, Mr. Turner also provided procedural development about range and noted that the Supreme Court had an upcoming oral argument in Rahimi. This appears on the docket on docket entry 80. But again, Mr. Turner did not raise a constitutional or facial challenge. It is only when the court looks at pages 36 and 37 of the addendum that counsel for Mr. Turner argues for the first time that the government, quote, failed to carry its burden. This does not appear previously in the record. Now, while it is possible that the government was meant to read the tea leaves and understand what counsel for Mr. Turner was getting at, the fact of the matter is it wasn't squarely presented and therefore government counsel didn't address it. Go ahead. I'm sorry, counsel. I, I'm just struggling with that a bit because I'm looking at the sentencing memorandum that Mr. Turner's counsel filed and I agree with you. It was not a lengthy argument in terms of the number of pages. But quite clearly on page 26, it says this court may and should declare 922 G1 unconstitutional for all of the reasons advanced by the defense. And it's a meekie in range. And this is after citing Bruin and some of the other decisions, including range from the Third Circuit. So that, to me, reads as a clear constitutional challenge. And again, there's five months or so and apparently a letter from the defense counsel in between until the hearing and the government just never responds at all. So, again, I sort of go back to my question of Bruin has been decided for almost a year at that point. Bruin itself is very clear that the burden is the government's. Why does the government do nothing for four or five months in response to this? And again, Your Honor, the government would note that this argument, short though it is, was not framed as an original objection, nor was it framed in a probe as the government would argue that it should have been properly brought, which is in a 12-beat motion. And for that reason, the government in this case, while it perhaps would have been best practices to request a hearing before the court. Ms. Feinberg, in addition to what Judge Rickleman has been discussing, we have the fact that once Rahimi came out, the government was on notice that this appeal would be decided under Rahimi. And there was plenty of opportunity for the government at that point to submit further briefing to us, an opportunity for both parties. And yet, your office apparently didn't think it was important to submit any further briefing to us on the developments in the law in this area. That's totally apart from the issue of the Rule 12 waiver and whether there was one or not. And it's not a matter of best practices. It's basic competence out of the U.S. Attorney's Office. Understood, Your Honor. And if the court would prefer supplemental letter briefing by the government at this juncture addressing Rahimi, the government would be happy to provide it. Can you explain to me why it wasn't filed before oral argument? I would say, Your Honor, that it was an oversight. There have been some personnel changes at the U.S. Attorney's Office, and this appeal was recently reassigned from one attorney to another, and it simply got lost in the shuffle. However, the government takes your point. It's inexcusable, and it won't happen again. Thank you, Counsel. Thank you, Attorney Feinberg. At this time, would you mute your audio and video? Attorney Shevitz, would you unmute your audio and video and please reintroduce yourself on the record to begin? You have a three-minute rebuttal. Vivian Shevitz again for Appellant Donald Turner. I wanted to just say that the Range case that Your Honor cited, I just read in Courthouse News Service, was just argued en banc on October 9th, and the headline is, The Third Circuit warms to gun ownership by nonviolent felons. Do you agree that a bank robbery is a crime of violence? I think that there are degrees. I think that you can't decide. By definition, isn't it a crime of violence under the ACC, a crime of violence under the guidelines? Isn't it defined that way by our case law? I believe so, but I don't think that answers the question anyway. Judge Thomas said that the issue of felon disenfranchisement was not decided in Heller, and the dicta should not be determinative. There are still many issues, especially with the length of disenfranchisement, and that is one of the things that the Third Circuit is considering. In this court's Langston case, which was plain error, the court said the fact that the government did not introduce historical facts to support the constitutionality of 922G1 makes it clear and obvious that Langston's conviction violates the Second Amendment. But in this case, the issue was raised, and the fact that the government did not sustain its burden, did not even attempt to meet its burden, should result in dismissal of that charge. I mean, we've been very critical of the government, and I understand that. But I will say, in the section of the red brief where they're arguing under plain error, they do cite a bunch of cases that I've read, and those do lay out the historical framework. So, no, they didn't cut and paste those into their brief, but they did cite the cases that lay it out. So, you know, I'm not sure that's insufficient. I think it is insufficient. We're not required on appeal to respond to an issue that was raised below. To put this burden on the appellant now, because the court really doesn't want to hold its nose in reverse, because the government did not support its burden, that's not a reason to put the burden on appellant. I don't know what its argument is. I like the historical facts. And to say at this time, post-appeal, we should get into supporting or discussing the historical facts that the government was in an obligation to put forth below, that's not right. There are rules, and they apply to both of us. The government didn't do its job. And here, now, on appeal, I really don't know what the historical precedent is. I haven't been able to figure it out. The Third Circuit doesn't know what to do yet. Well, you seem into rules, but I didn't read very much in your great brief about the appellate waiver, which seems to be the rule that you're supposed to tell us why that waiver, which is there. Judge Lynch points out a lot of things that might be significant about that. I didn't get those from you. Those came from her. I get it. Rules go all ways. Because the government's argument was that there was an appellate waiver, and there wasn't. So, proceeding on its own assumption that there was a waiver, then it said we should have argued that... Is your position that if I read you from the plea agreement, which is over on my desk, I won't be reading to you an appellate waiver signed by your client? An appellate waiver that doesn't cover everything, so that should have been litigated below, too. It was raised there. The government is saying, well, we shouldn't have to respond to everything, anything below, because we usually do it at a different time. But the issue was raised. Counsel, they didn't raise it. You didn't raise it. It doesn't help us resolve the issues on the merits, if, indeed, that is the proper outcome of the case. It's quite clear that your client is not like the defendant in the Third Circuit case who made a misrepresentation on a government form because he needed to get food to feed his family. Your client is a four-time bank robber who used weapons or threats of weapons. Why isn't that just the classic case of someone who poses a danger to society? Just one sentence answer. Because the government has the burden of proving that the... No, no, you're not answering my question. What I want to say is... And there's a history of prohibitions on ownership of people who are violent and lawless. What is your response to that? My response is I don't know that there's a history of lifetime banishment. All right, fine. Thank you. I don't know that. And I think after Judge Thomas said that he doesn't know that either, noting the passing records... He was not in the majority in Rahimi.  Okay, so you will admit majority opinions controlled. I will admit that. All right, thank you. Thank you very much, counsel. Thank you. Thank you, counsel. That concludes argument for today. This session of the Honorable United States Court of Appeals is now recessed until the next session of the court. God save the United States of America and this honorable court. Counsel, you may disconnect from the meeting.